COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

                                        NO.  2-05-121-CV

 

 

SOUTHERN COUNTY MUTUAL                                               APPELLANT

INSURANCE

 

                                                   V.

 

SURETY BANK N.A.
INDIVIDUALLY                                           APPELLEE

AND D/B/A SURETY PREMIUM 

FINANCE

 

                                              ------------

 

         FROM COUNTY COURT AT LAW NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I. 
Introduction








Appellant Southern County Mutual Insurance
appeals the trial court=s grant of summary judgment to
appellee Surety Bank N.A., a lender that provides financing for purchasers of
insurance to pay premiums owed on insurance policies.  The parties= dispute
centers around Southern County=s
alleged duty to refund premiums to Surety Bank after the financed insurance
policy was cancelled.  Because a fact
issue exists regarding any duty on the part of Southern County to refund the
entire amount of the unearned premiums directly to Surety Bank, we reverse and
remand.

II. 
Factual Background

In March 2001, Scotts Temple, a church in
Houston, Texas, was shopping for automobile insurance.  Scotts Temple contacted its insurance agent,
United National Insurance Agency, who in turn contacted U.S. Risk Underwriters,
Inc., an agent for Southern County. 
Southern County agreed to issue an insurance policy to Scotts Temple,
and the coverage was bound as of March 29, 2001.  The total premium charged by Southern County
for the policy was $45,999.

To pay this premium, Scotts Temple sought
financing from appellee Surety Bank.  On
April 6, 2001, Scotts Temple and United National signed Surety=s
Premium Finance Agreement (APFA@).  The PFA required a cash down payment of
$11,706, so the amount actually financed by Surety Bank was $34,293.  Surety Bank issued a check for $34,293 to
Southern County=s agent, U.S. Risk, on April 13,
2001.








The terms of the PFA show that the $11,706 down
payment was supposed to be paid by Scotts Temple; however, Scotts Temple never
paid it. Under U.S. Risk=s agency contract with Southern
County, U.S. Risk was required to forward the full amount of the premium due on
each policy it sold for Southern County, regardless of whether U.S. Risk was
actually able to collect the full amount from the insured.  The PFA provided financing for only $34,293 of
the $45,999 premium, leaving an unpaid balance of $11,706Cthe down
payment that Scotts Temple never paid. 
Therefore, U.S. Risk paid Southern County the balance due, $11,706, out
of its own pocket.








According to Surety Bank, Scotts Temple continued
its history of nonpayment by failing to remit any installments due under the
PFA; therefore, the insurance policy was cancelled in May 2001Cless
than two months after it had taken effect. 
Southern Country subsequently returned to U.S. Risk unearned premiums in
the amount of $31,721.70, which represented the portion of the policy premium
that was paid in advance but not used because the insurance was cancelled
before the end of the policy period. 
U.S. Risk then added its unearned commission, $3,094.80, and deducted
$7,133.60, claiming that this amount was its pro rata share of the portion of
the premium that it had paid out of its own pocket when Scotts Temple failed to
make the down payment.  U.S. Risk then
sent the remaining balance, $27,682.90, to Surety Bank.[1]

Surety Bank sued, contending that Southern County
failed to refund the unearned premiums as required by the PFA and Texas law.[2]  Surety Bank moved for summary judgment
against Southern County, arguing that (1) both the PFA and the Texas Insurance
Code granted it a security interest in all unearned premiums and (2) Southern
County was bound under the PFA through theories of agency and ratification.








According to Southern County=s
discovery responses, the total unearned portion of the original $45,999 premium
was $38,685.  However, United National
and U.S. Risk had received commissions on the sale of the insurance policy
amounting to eighteen percent of the $45,999 gross premium.  Therefore, Southern County returned
eighty-two percent of the total unearned premiums and expected the agents to
return the remaining eighteen percent, which represented their unearned
commissions on the unearned premiums.

However, Surety Bank asserted that Southern
County owed it the total unearned premiums, $38,685Can
amount that included the down payment paid by U.S. Risk as well as the agents=
unearned commissions.  Because Surety
Bank had already received $27,682.90 in unearned premiums from U.S. Risk, it
asked the court to award it the differenceC$11,002Cas well
as its attorney=s fees.  The trial court so ordered when it granted
Surety Bank=s motion and signed a final
judgment against Southern County on March 1, 2005. Southern County now appeals.

III. 
Discussion

In its third issue, Southern County argues that
Surety Bank failed to show the absence of a fact issue with regard to its
breach of contract claim.  Southern
County asserts that Surety Bank is not entitled to the entire amount of the
unearned premiums because neither Surety Bank nor its borrower, Scotts Temple,
ever paid the down payment; accordingly, Surety Bank cannot receive a windfall
and recover money that it never paid out. 
Surety Bank responds that the PFA and Texas law require Southern County
to return the entire amount of the unearned premiums due under the insurance
policy to Surety Bank, regardless of whether another party originally paid part
of the premium.








In a summary judgment case, the issue on appeal
is whether the movant met the summary judgment burden by establishing that no
genuine issue of material fact exists and that the movant is entitled to
judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Sw. Elec.
Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.  The summary
judgment will be affirmed only if the record establishes that the movant has
conclusively proved all essential elements of the movant=s cause
of action or defense as a matter of law. 
Clear Creek Basin, 589 S.W.2d at 678.








As Surety Bank pointed out in the trial court and
now on appeal, chapter 24 of the Texas Insurance Code was designed to regulate
and protect the premium finance industry.[3]  Tex.
Ins. Code Ann. arts. 24.01-24.22; Serv. Fin. v. Adriatic Ins. Co.,
46 S.W.3d 436, 447 (Tex. App.CWaco
2001), judgm=t vacated w.r.m., 51
S.W.3d 450 (Tex. App.CWaco 2001, no pet.).  For example, when an insured fails to make
payments under a premium finance agreement, article 24.17 authorizes the
premium finance lender to cancel the insurance contract and receive the unearned
premiums due under the contract.  Tex. Ins. Code Ann. art. 24.17(d),
(f).  Chapter 24 of the insurance code
contains criminal and administrative penalties for violations of its
provisions.  See id. art.
24.08.  It does not, however, create a
private right of action for its enforcement. 
See Brown v. De La Cruz, 156 S.W.3d 560, 567 (Tex. 2004).  Accordingly, any cause of action by a premium
finance lender to recover the unearned premiums must sound in contract.  See id.; Serv. Fin., 46 S.W.3d at 448.









Insurance contracts are subject to the same rules
of construction as ordinary contracts.  Trinity
Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 823 (Tex. 1997).  To prevail on a breach of contract claim
seeking a refund of unearned premiums, a premium finance company must establish
that (1) the insurance policy provides for a refund of unearned premiums upon
cancellation, (2) the premium finance company has authority to collect the
refund, (3) the premium finance company gave timely notice of the financing
agreement, (4) the insured defaulted on the premium finance agreement, (5) the
premium finance company gave notice of the insured=s
default and requested cancellation of the policy, and (6) the insurer failed to
make the proper refund.  Serv. Fin.,
46 S.W.3d at 449.  

The parties= dispute
centers around the sixth requirement: proof that the insurer failed to make the
proper refund.  Specifically, the parties
disagree on what comprises the unearned premiums to be returned.  Surety Bank argues that it possessed a
security interest in every penny of premium that had not yet been earned by
Southern County as of the policy cancellation date, regardless of the money=s
source.  But because Scotts Temple
assigned Surety Bank the right to receive Aany and
all unearned premiums . . . which become payable under [the insurance policy],@ Surety
Bank stands in the shoes of Scotts Temple and may assert only those rights
under the insurance policy that Scotts Temple itself could assert.  See Gulf Ins. Co. v. Burns Motors, Inc.,
22 S.W.3d 417, 420 (Tex. 2000). 
Accordingly, we must determine what part of the unearned premiums became
payable to Scotts Temple upon the policy=s
cancellation.  It is this part, and this
part only, to which Surety Bank is entitled under the terms of the PFA.  See id.; see also Tex. Ins. Code Ann. art. 24.17(f)
(providing that, upon cancellation, Athe
insurer shall return whatever unearned premiums are due under the insurance
contract@).








We cannot make this determination, however,
because the summary judgment record does not contain the insurance policy or
any other proof establishing the terms of the policy relating to the return of
unearned premiums.  Although a plaintiff
who was not a party to the original insurance contract need not introduce the
entire policy in evidence, it must in some way prove those terms of the policy
that allow its recovery.  See Paragon
Sales Co. v. N.H. Ins. Co., 774 S.W.2d 659, 661 (Tex. 1989).  In its responses to Surety Bank=s
discovery requests, Southern County admitted the following: 

$      All of
the insurance policies issued by Defendant Southern County Mutual Insurance
which are the subject of this litigation provided for the refund of unearned
premiums, commissions and taxes to be calculated pursuant to the provisions of
the policy.

 

$      The
insurance policies financed by Plaintiff Surety that are the subject of this
litigation provide for a refund of unearned premium upon cancellation.

 








Beyond these admissions, the record contains no
evidence of the policy=s terms regarding return of the
unearned premiums.  Therefore, the record
reveals only that Southern County was required to make the refund; it does not
reveal that Southern County was required to return to Scotts Temple amounts
paid by other parties (such as the down payment fronted by U.S. Risk), rather
than to the parties who made those payments. 
Accordingly, a fact issue exists as to whether Southern County breached
the insurance contract.  Because the
record does not establish that no genuine issue of material fact exists and
that Surety Bank conclusively proved all essential elements of its cause of
action, Surety Bank was not entitled to summary judgment.  See Tex.
R. Civ. P. 166a(c); Sw. Elec. Power Co., 73 S.W.3d at 215; Clear
Creek Basin, 589 S.W.2d at 678.  We
sustain Southern County=s third issue.[4]

IV. 
Conclusion

Having sustained Southern County=s third
issue, we hold that the trial court erred in granting summary judgment in favor
of Surety Bank.  We reverse the judgment
and remand this cause to the trial court.

 

 

BOB
MCCOY

JUSTICE

 

PANEL A:   CAYCE,
C.J.; HOLMAN and MCCOY, JJ.

 

DELIVERED: February 16,
2006











[1]In the PFA, Scotts Temple assigned to Surety Bank its
right to receive payment of Aany and all unearned premiums and dividends which
become payable under [the insurance policy],@ gave Surety Bank a security interest in these
unearned premiums, and appointed Surety Bank as its attorney-in-fact Awith
full authority upon any default to cancel [the policy] . . . and receive all
sums resulting therefrom.@





[2]Surety Bank originally sued Scotts Temple and United
National along with Southern County and U.S. Risk.  United National was severed from the case,
and Surety Bank nonsuited all remaining defendants but Southern County.





[3]Chapter 24 of the Texas Insurance Code was in effect
at the time the PFA in this case was signed, but it has since been
recodified.  See Act of May 25,
1979, 66th Leg., R.S., ch. 825, ' 1, 1979 Tex. Gen. Laws 2149, 2149-58 (repealed 2003)
(current version at Tex. Ins. Code Ann.
'' 651.001-.209 (Vernon 2005)).  For clarity, all subsequent citations will be
to the former section numbers.





[4]Because of our disposition of Southern County=s third
issue on appeal, we need not reach its remaining issues.  See Tex.
R. App. P. 47.1.