# Supreme Court of Texas

―――――――――

No. 23-0955

―――――――――

Walgreens,
*Petitioner*,

v.

Pamela McKenzie,
*Respondent*

═══════════════════

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

═══════════════════

**Argued February 20, 2025**

JUSTICE BUSBY delivered the opinion of the Court.

The Texas Citizens Participation Act permits a party to seek early dismissal of a legal action that is based on or in response to that party's exercise of the right of free speech. In this case, the plaintiff sued a corporate employer after its employee erroneously accused the plaintiff of shoplifting. Had the employee been sued for damages resulting from that accusation, the TCPA would have applied, authorizing the employee to file a motion to dismiss. We are asked whether the employer may also take advantage of the TCPA's protections with

respect to the plaintiff's claim that it negligently hired, trained, and supervised its employee. The court of appeals held that it could not, and that the trial court thus properly denied the employer's motion to dismiss the negligent-hiring claim. We disagree. We hold that the TCPA applies and that the plaintiff failed to meet her evidentiary burden to avoid dismissal. We therefore reverse the court of appeals' judgment in part and remand the case to the trial court for further proceedings.

## BACKGROUND

Pamela McKenzie was shopping in a Houston Walgreens in 2019 when she was detained in the store on suspicion of shoplifting. The Walgreens employee who called the police suspected McKenzie was the same person who had stolen from the store earlier that day and had returned.[1] After reviewing surveillance video and determining that McKenzie was not the thief, the police released her. McKenzie claims that the other Walgreens employees in the store that day had agreed she was not the thief, but the employee had called the police anyway.

McKenzie sued Walgreens for intentional infliction of emotional distress, negligence, gross negligence, respondeat superior liability for employee negligence,[2] and negligent hiring, training, and supervision

---

[1] Walgreens contends that it has been unable to identify the employee in question.

[2] "Respondeat superior" is not an independent cause of action; rather, it is a basis on which a party may be held vicariously liable for the negligence of an agent or employee acting within the scope of his or her agency or employment. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130-31 (Tex. 2018). As the court of appeals correctly explained, this liability theory

2

(NHTS). Walgreens moved to dismiss under the TCPA, arguing that McKenzie's claims are based on the employee's alleged false report to the police, which is "a communication made in connection with a matter of public concern" and therefore protected under the Act. TEX. CIV. PRAC. & REM. CODE § 27.001(3). The trial court denied the motion.

A divided court of appeals affirmed in part and reversed in part. 676 S.W.3d 170, 174 (Tex. App.—Houston [14th Dist.] 2023). The panel held that the trial court erred by not dismissing McKenzie's claims of intentional infliction of emotional distress, negligence and gross negligence, and vicarious liability for employee negligence because those claims were "based on or in response to the exercise of the right of free speech" and McKenzie failed to establish a prima facie case for the elements of each claim. *Id.* at 176, 179-181.[3] That left only the NHTS claim, which a majority held is not subject to dismissal under the TCPA because it is not "*entirely* based on or in response to [Walgreens'] employee's exercise of his First Amendment rights in calling the police." *Id.* at 176-77 (emphasis added). Instead, the claim is based on both that exercise *and* Walgreens' conduct in hiring, training, and supervising the employee, which occurred before the incident.[4] *Id.* The majority

fails if the underlying claims fail. 676 S.W.3d 170, 180-81 (Tex. App.—Houston [14th Dist.] 2023).

[3] McKenzie has not sought our review of that portion of the court of appeals' judgment.

[4] The court of appeals also faulted Walgreens for not specifically identifying the NHTS claim in its motion as one of the claims for which it sought dismissal. *Id.* at 177 n.2. Walgreens sought dismissal of the entire "action," "all of [McKenzie]'s allegations," and "all of [McKenzie]'s claims," but its motion stated that McKenzie asserted only two causes of action: intentional

3

remanded the case to the trial court so that McKenzie could pursue her NHTS claim. *Id.* at 181.

The dissenting justice opined that the NHTS claim, like the claims for negligence and intentional infliction of emotional distress, is not viable in the absence of underlying tortious activity by the employee. *See id.* at 181-82 (Wilson, J., dissenting). And because those other claims failed, so too must the NHTS claim. *Id.* at 183.

Walgreens petitioned this Court for review, which we granted.

## ANALYSIS

The principal issue presented is whether the TCPA applies to McKenzie's NHTS claim, thereby authorizing Walgreens to file a motion to dismiss that claim. We hold that the TCPA does apply, and we further conclude that the trial court erred in denying the motion.

---

infliction of emotional distress and negligence. McKenzie's petition actually listed three causes of action, the third being what she labeled "Vicarious Liability/Respondeat Superior." It was under this count that McKenzie alleged that Walgreens negligently hired, trained, and supervised its employee.

But it seems that neither of the parties believed—at least not then—that McKenzie was asserting an independent NHTS cause of action. In her response to Walgreens' motion to dismiss, McKenzie asserted that she had established a prima facie case "for each cause of action" in her petition. And she argued that she established the elements of her claims of negligence and intentional infliction of emotional distress and her claim that Walgreens was vicariously liable for the negligence of its employee. But she did not argue that she was asserting an independent claim for NHTS, nor did she attempt to establish the elements of such a claim.

Nevertheless, in its reply to that response, Walgreens specifically attacked any NHTS claim that McKenzie may have raised, arguing that she failed to establish a prima facie case. And it argued similarly in a supplemental brief filed in support of its motion to dismiss after McKenzie deposed Walgreens' corporate representative.

4

## I. The TCPA framework

The TCPA's statutorily expressed purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE § 27.002. The statute serves this dual purpose "by authorizing a motion to dismiss early in the covered proceedings, subject to expedited interlocutory review." *McLane Champions, LLC v. Houston Baseball Partners LLC*, 671 S.W.3d 907, 914 (Tex. 2023) (citing TEX. CIV. PRAC. & REM. CODE §§ 27.003, 27.008).

A party moving for dismissal under the TCPA must demonstrate that the TCPA applies to the "legal action" against it—that is, that the action "is based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association." TEX. CIV. PRAC. & REM. CODE §§ 27.003, 27.005(b). As relevant here, the TCPA defines "legal action" to include "a cause of action," and it defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3), (6). If the TCPA applies to a cause of action, the party bringing it may avoid dismissal by establishing with "clear and specific evidence a prima facie case for each essential element of [her] claim." *Id.* § 27.005(c).

## II. The TCPA applies to McKenzie's NHTS claim.

We begin by evaluating whether the TCPA applies to McKenzie's NHTS cause of action. Although we have not ruled definitively on the existence, elements, or scope of an NHTS claim, we have recognized that

5

any such claim would require proof of the employer's negligence in hiring, training, and supervising the employee as well as the employee's subsequent negligent act or omission, both of which must proximately cause the injury. *See Endeavor Energy Res., L.P. v. Cuevas*, 593 S.W.3d 307, 311 (Tex. 2019); *see also Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012) (noting cases holding that a negligent-hiring claim would "require[] that the plaintiff suffer some damages from the foreseeable misconduct of an employee hired pursuant to the defendant's negligent practices"). Walgreens thus asserts that, like the other claims McKenzie asserted, the NHTS claim is based on or in response to Walgreens' exercise of the right of free speech because the requisite negligent act of its employee involved the employee's communications regarding McKenzie's purported shoplifting.

The court of appeals, however, held that McKenzie's NHTS claim does not fall within the purview of the TCPA because Walgreens' alleged negligence in hiring, training, and supervising the employee—the other recognized element of an NHTS claim—amounts to "conduct, not communications." 676 S.W.3d at 176. The court concluded that a covered claim must be "entirely" based on or in response to the exercise of free speech rights, so an NHTS claim falls outside the boundaries of the TCPA. *Id.* (citing *Union Pac. R.R. Co. v. Dorsey*, 651 S.W.3d 692, 695-96 (Tex. App.—Houston [14th Dist.] 2022, no pet.) ("When a legal action is in response to both expression protected by the TCPA and other unprotected activity, the legal action is subject to dismissal only to the extent that it is in response to the protected conduct, as opposed to being subject to dismissal in its entirety.")).

In analyzing the TCPA's applicability, we follow settled principles of statutory interpretation. We construe statutes according to their plain language, consider them as a whole, and "presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). Further, we give undefined terms in a statute their ordinary meaning unless "a different or more precise definition is apparent from the term's use in the context of the statute." *Id.*

In 2019, the Legislature amended the provision of the TCPA at issue here. Before that amendment, the statute authorized dismissal of a legal action that was "based on, *relate[d] to*, or [was] in response to" the exercise of the right of free speech. *See* Citizens Participation Act, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019) (emphasis added). The current version narrows the required nexus between the action and the protected activity by deleting the broadest connective language—"relates to"—and authorizing a dismissal motion only when the action is "based on or is in response to" the activity. TEX. CIV. PRAC. & REM. CODE § 27.003(a); *see Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009) ("[W]e presume that [statutory] deletions are intentional and that lawmakers enact statutes with complete knowledge of existing law.").

Our Court has not had occasion to elaborate on the required connection between the cause of action asserted and the movant's exercise of a protected right since the amendment took effect. The TCPA does not define the connective terms, and courts of appeals have

7

variously described the "based on" portion of the standard as requiring that the exercise of a protected right be the "gravamen" of the claim, *e.g.*, *Newstream Roanoke 6.125, LLC v. Shore*, No. 02-22-00506-CV, 2023 WL 5615871, at *7 (Tex. App.—Fort Worth Aug. 31, 2023, no pet.), that the claim be "factually predicated on" the exercise, *e.g.*, *Apache Corp. v. Apollo Expl., LLC*, No. 11-21-00295-CV, 2023 WL 3511262, at *3 (Tex. App.—Eastland May 18, 2023, no pet.), or that the exercise be a "main ingredient" or "fundamental part" of the claim, *e.g.*, *Ernst & Young, LLP v. Ryan, LLC*, No. 01-21-00603-CV, 2023 WL 4239350, at *8 (Tex. App.—Houston [1st Dist.] June 29, 2023, pet. denied). The latter description is premised on dictionary definitions, which are useful in discerning a statutorily undefined term's ordinary meaning. *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011); *see Base*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009) ("a main ingredient"; "the fundamental part of something"). And the "in response to" component of the provision "denotes some sort of answer or other act in return." *Ernst & Young*, 2023 WL 4239350, at *8; *see Response*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2009) ("something constituting a reply or a reaction").

We interpreted somewhat similar statutory-nexus language in *Endeavor Energy*, which concerned the applicability of Chapter 95 of the Civil Practice and Remedies Code to a negligent-hiring claim. 593 S.W.3d at 309. In pertinent part, Chapter 95 applies to a "claim for damages caused by negligence" that "arises from the . . . use of an improvement to real property." TEX. CIV. PRAC. & REM. CODE §§ 95.001, 95.002. We explained that a claim "arises from" the use of an

improvement if it "depends, in part, on proof that [the] contemporaneous use of an improvement caused the injury." *Endeavor Energy*, 593 S.W.3d at 311-12.

Although these phrases drawn from dictionary definitions—"factually predicated on," "a main ingredient of," "a fundamental part of," "in answer or reaction to"—do not replace the statutory language, they are helpful in understanding and applying it. And we have no hesitation in concluding that the court of appeals here imposed a stricter nexus than the statute's language authorizes. In short, by inserting the word "entirely," the court of appeals changed the meaning of the language the Legislature chose. In essence, the court of appeals construed the TCPA to apply when protected activity is the *only* ingredient or *only* part of the legal action, the legal action is *solely* dependent on proof of protected activity, or the legal action is instituted *solely* in reaction to protected activity. Nothing in the statutory language itself—"is based on or is in response to"—supports that limitation.

Turning to the legal action at issue, as discussed, the plaintiff cannot prevail on an NHTS claim without proving *both* (1) the employer's negligence in hiring, training, or supervising the employee *and* (2) the employee's subsequent tortious act or omission. *Id.* at 311. When either of the alleged instances of negligence or other tortious conduct is based on or in response to the exercise of a protected right, the TCPA applies.

McKenzie identifies two acts by the Walgreens employee that she alleges were tortious: (1) he accused McKenzie of stealing in front of

other patrons; and (2) he "wrongfully deprived her of her . . . freedom by falsely accusing her of theft" to the police and detaining her until they arrived.[5] These are serious allegations. Wrongfully accusing someone of a crime, especially in public, subjects the innocent person to humiliation, the threat of arrest and detention, and possibly even more dire consequences. Anger, shame, and a desire to see justice done are the kinds of responses that we would expect to follow from any citizen's detention based on a false accusation.

Nevertheless, these allegedly tortious acts undoubtedly consisted of "communication[s] made in connection with a matter of public concern"—that is, the "[e]xercise of the right of free speech" as the TCPA defines that term. TEX. CIV. PRAC. & REM. CODE § 27.001(3); *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) (identifying "commission of crime" as a matter of public concern). McKenzie's NHTS claim is thus

---

[5] The court of appeals construed McKenzie's petition as alleging these acts were negligent. It then held that neither act could be recast as negligent rather than intentionally tortious, 676 S.W.3d at 179, and McKenzie has not appealed that holding. McKenzie argues that she sufficiently pleaded these acts, if not as independent claims, then as elements of or facts supporting an NHTS cause of action. *See Bos v. Smith*, 556 S.W.3d 293, 305-06 (Tex. 2018) ("Pleadings must give fair notice of the nature and basic issues so the opposing party can prepare a defense. When, as here, no special exception is made, we liberally construe the pleadings in the pleader's favor." (footnote omitted)). Walgreens concedes that it did not file special exceptions to McKenzie's petition to seek clarification of her claims.

We have not addressed whether an employee's intentionally tortious acts can support an NHTS claim. *Cf. Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 800-01, 807 (Tex. 2010) (noting plaintiff's negligent-supervision-and-retention claim was predicated on assault by the employee but holding that Chapter 21 of the Labor Code supplanted any such claim). And we need not decide that issue here. We merely presume for purposes of our analysis that an intentional tort by the employee may sustain an NHTS claim.

"based on" that exercise. *Cf. Endeavor Energy*, 593 S.W.3d at 311 ("When *one* of the negligent acts involves the contemporaneous use of an improvement to real property, the claim arises from that act, regardless of when the other negligent act occurred or whether it involved the use of an improvement." (emphasis added)). McKenzie's claims were also filed in reaction to the communications, so the NHTS claim is additionally "in response to" Walgreens'[6] exercise of the right of free speech and is thus subject to a dismissal motion under the TCPA. This conclusion is simply a consequence of the statute's sweep; it in no way

---

[6] It is true that the *employee*, whom McKenzie did not sue, was engaging in the complained-of communications. *See* TEX. CIV. PRAC. & REM. CODE § 27.003(a) (authorizing a party to file a motion to dismiss a legal action that "is based on or is in response to *a party's* exercise of" a protected right (emphasis added)). But McKenzie alleges, and Walgreens now concedes, that the employee was acting as Walgreens' agent, and McKenzie attributes the agent's accusations directly to Walgreens. *See In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 188 (Tex. 2007) ("Corporations can act only through human agents, and many business-related torts can be brought against either a corporation or its employees."). The TCPA's stated purpose "is to encourage and safeguard the constitutional rights of *persons* to petition, speak freely, associate freely, and otherwise participate in government," TEX. CIV. PRAC. & REM. CODE § 27.002 (emphasis added), but nowhere does the Act indicate its intent to limit its applicability solely to *natural* persons. *See* TEX. GOV'T CODE § 311.005(2) ("'Person' includes corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity."); *In re Transcon. Realty Invs., Inc.*, 271 S.W.3d 270, 272 (Tex. 2008) ("In construing statutes, the word 'person' includes corporations and other legal entities unless the context indicates otherwise." (citing TEX. GOV'T CODE § 311.005(2))). The Act intentionally refers to "*a party's* exercise of the right of free speech." TEX. CIV. PRAC. & REM. CODE §§ 27.003 (emphasis added), 27.005(b); *see Kappus v. Kappus*, 284 S.W.3d 831, 835 (Tex. 2009) ("We presume the Legislature chose its words carefully and intentionally."). Thus, we presume that "a party's exercise of" a protected right includes an exercise of that right by a corporate party's agents on its behalf.

11

suggests that the Court regards McKenzie's allegations as specious or her experience as insignificant.

## III. McKenzie failed to establish a prima facie case of NHTS.

Because the TCPA applies to McKenzie's NHTS claim, the burden shifts to her to "establish[] by clear and specific evidence a prima facie case for each essential element of [her] claim." TEX. CIV. PRAC. & REM. CODE § 27.005(c). The court of appeals did not reach this issue given its decision at the first step that the TCPA does not apply, but we will address it in the first instance in the interest of judicial economy.

The lack of evidence regarding Walgreens' hiring, training, and supervision of the offending employee is dispositive of the NHTS claim. *See Endeavor Energy*, 593 S.W.3d at 311 (explaining that both the employer's negligence in hiring (or training) the employee and the employee's subsequent negligent act or omission must proximately cause the harm). False accusations of theft are serious matters, and employers would be well advised to train their employees to handle such issues with care. But as Walgreens correctly pointed out in the court of appeals, McKenzie has identified no evidence of (1) the employee's hiring, training, supervision, or retention; (2) the applicable standard of care for any of those matters; (3) how the employee's hiring, training, supervision, or retention fell below that standard; or (4) how any such breach proximately caused the events of which she complains. For any

12

or all of these reasons, McKenzie has not established a prima facie case of NHTS, and the trial court erred in refusing to dismiss that claim.[7]

## IV. McKenzie's cross-issues do not entitle her to relief.

In her briefing in this Court, McKenzie makes several additional arguments that she refers to as "cross-issues." First, she argues that the court of appeals rejected her claim for intentional infliction of emotional distress (IIED) because of "the absence of physical injury" and that this was error because certain claims—including defamation—allow recovery for mental anguish. *See, e.g.*, *Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex. 2002) (noting that defamation per se allows for recovery of mental-anguish damages). So too, she asserts, should she be permitted to proceed with her IIED claim here despite the lack of bodily injury.

We reject this argument for two reasons. First, McKenzie did not file a petition for review in this Court, so we are unable to grant her

---

[7] Walgreens also argues that the court of appeals erred in considering unpleaded causes of action—defamation and false imprisonment—as potential "underlying tort[s]" by the employee that could support an NHTS claim. Although an employee's tortious conduct is an element of any NHTS claim, *Endeavor Energy*, 593 S.W.3d at 311, we note that nothing in our precedent supports the notion that such a claim will fail merely because the plaintiff did not also bring a separate tort claim based on that conduct.

Walgreens also criticizes the court of appeals for addressing and rejecting an argument it made in the trial court but not in its briefing in the court of appeals: that no clear and specific evidence supported the NHTS claim because there was no evidence the employee was acting outside the scope of his employment. We decline to fault the court of appeals for its effort to be thorough, and in any event, we need not address whether the court reached the correct conclusion on that issue because it has no bearing on our disposition.

relief regardless of whether her arguments have merit. *See* TEX. R. APP. P. 53.1 ("A party who seeks to alter the court of appeals' judgment must file a petition for review."). Second, we note that the court of appeals dismissed McKenzie's IIED claim not for lack of bodily injury but because it concluded none of Walgreens' actions constituted extreme and outrageous conduct as necessary to support an IIED claim. *See* 676 S.W.3d at 178-79; *see also Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017) (identifying extreme and outrageous conduct as an element of IIED).

McKenzie next argues that Walgreens' petition for review is premature, as motions for rehearing and reconsideration en banc remain pending in the court of appeals. But both motions were denied by the court of appeals on October 12, 2023, well before Walgreens filed its petition for review in this Court on December 12, 2023. Walgreens' petition for review was timely filed.

Finally, McKenzie raises for the first time in this Court two exceptions to the TCPA: the commercial-speech exception and the bodily injury exception. *See* TEX. CIV. PRAC. & REM. CODE § 27.010(a)(2), (3) ("This chapter does not apply to . . . a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer; [or to] a legal action seeking recovery for bodily injury . . . ."). We conclude neither exception provides an alternative basis to affirm the court of appeals' judgment declining to apply the TCPA to the NHTS claim.

14

For a party to benefit from an exception, it generally must raise that exception in the trial court. *See, e.g., Tex. Comptroller of Pub. Accts. v. Att'y Gen. of Tex.*, 354 S.W.3d 336, 341 (Tex. 2010) ("[A]n agency generally waives any exemption [to a FOIA request] it fails to raise at the initial proceedings . . . ."); *Paragon Sales Co. v. N.H. Ins. Co.*, 774 S.W.2d 659, 661 (Tex. 1989) ("Any exemptions, exceptions, or exclusions [to an insurance policy] that would limit or deny the plaintiff's recovery must be pled as affirmative defenses by the defendant insurer."). McKenzie did not raise either exception until her briefing in this Court and has thus waived reliance on them.

Moreover, even if McKenzie had preserved her challenge, she has not demonstrated that the exceptions apply here. In particular, she has not pointed to evidence that the Walgreens employee's allegedly tortious statements and conduct "arose out of a commercial transaction involving the kind of goods or services [Walgreens] provides," as required to invoke the commercial-speech exemption. *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018). Nor has McKenzie established that the kinds of bodily injury she describes—such as "elevated blood pressure[,] excessive yawning and fatigue related to sleeplessness"—are covered by the bodily injury exception. *See, e.g., City of Tyler v. Likes*, 962 S.W.2d 489, 495-96 (Tex. 1997) ("[M]inor physical symptoms . . . such as difficulty sleeping[] are not serious bodily injuries that can form the basis for recovering mental anguish damages.").

## CONCLUSION

The TCPA applies to any claim for negligent hiring, training, or supervision when at least one of the underlying tortious acts is based on

15

or in response to the defendant's exercise of the right of free speech. Because the TCPA applies in this case, and because McKenzie has failed to establish a prima facie case of negligent hiring, training, or supervision, her claim must be dismissed. We therefore reverse the portion of the court of appeals' judgment affirming the trial court's denial of Walgreens' motion to dismiss the NHTS claim and render judgment dismissing that claim. The remainder of the court of appeals' judgment is undisturbed. We remand the case to the trial court for dismissal of McKenzie's other claims against Walgreens pursuant to the court of appeals' judgment and for any other necessary proceedings.

J. Brett Busby
Justice

**OPINION DELIVERED:** May 16, 2025

16